NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DANIELLE T. DURAN, *Petitioner/Appellee*,

*v.*

ERIC ANDERSON, *Respondent/Appellant*.

VINCENT DURAN and SUZANNE DURAN, *Intervenors/Appellees*.

No. 1 CA-CV 23-0113 FC

FILED 2-20-2024

Appeal from the Superior Court in Mohave County
No. S8015DO201700209
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Danielle Duran, Mohave Valley
*Petitioner/Appellee*

Law Offices of Heather C. Wellborn PC, Lake Havasu City
By Heather C. Wellborn, Russell Woemmel, Anita Dale
*Counsel for Respondent/Appellant*

Silk Law Office, Lake Havasu City
By Melinda Silk
*Counsel for Intervenors/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

---

**C A T L E T T**, Judge:

¶1        Eric Anderson ("Father") appeals the superior court's order awarding maternal grandparents Vincent Duran ("Grandfather") and Suzanne Duran ("Grandmother") (collectively "Grandparents") visitation time with Father's minor daughter, L.  On appeal, Father primarily challenges the superior court's finding that no credible evidence supports Father's assertion that Grandfather sexually abused L.  Because the court did not abuse its discretion in making that finding or in how it awarded Grandparents visitation time, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Father and Danielle Duran ("Mother") were never married but had L. together in 2016.  In 2018, Mother and Father agreed to joint legal decision-making authority and equal parenting time.  In May 2019, however, the Department of Child Safety ("DCS") took L. into custody and placed her with a relative due to substance use by both parents and domestic violence between Mother and Father.  In September 2019, DCS placed L. in Father's physical custody after finding that he "actively engaged in all services and has eliminated the safety threats in the home."  Mother only had supervised visits with L. due to DCS's ongoing concerns about her drug use.

¶3        In January 2020, Father petitioned to modify legal decision-making authority and parenting time, requesting sole legal decision-making authority after DCS informed him it would not close L.'s dependency case without such orders in place.  Grandparents then

2

petitioned for legal decision-making authority and placement of L., but later changed their position and sought only visitation under A.R.S. § 25-409. Grandparents otherwise supported Mother's request for joint legal decision-making authority and "primary parenting time, subject to [Father's] reasonable parenting time."

¶4          In July 2020, Father reported to the Lake Havasu City Police Department ("LHCPD") that Grandfather inappropriately touched L. in a restaurant bathroom in Arizona. LHCPD interviewed L., who said the abuse took place at Grandparents' house in Riverside, California. The last time L. had been at Grandparents' house was April 2019.

¶5          Because the alleged abuse took place in California, LHCPD referred the case to the Riverside City Police Department ("RCPD"). RCPD conducted interviews with L., Grandmother, and Grandfather, and concluded there was no evidence corroborating L.'s statements. RCPD suspended the investigation pending the discovery of corroborating evidence.

¶6          In September 2021, L. also participated in a forensic interview with Phoenix Children's Hospital Child Protection Team ("PCHCPT"). At the start of the interview, L. was asked what she liked to do and responded that Grandfather took photos of her "in-betweenie." When the interviewer asked L. what Father had said about the interview, L. stated, "He said I gotta say that." When the interviewer asked L. who had asked her to tell the interviewer about Grandfather taking photos, L. responded, "Daddy." The interviewer also asked L. if anyone had ever tried to touch her "in-betweenie." Child said, "No." The interviewer asked L. if anyone had ever wanted her to touch their "in-betweenie." Child responded, "No, that would be disgusting."

¶7          The superior court held an evidentiary hearing in October 2022, during which Grandfather denied abusing L. The court reviewed both police reports as well as the forensic interview with PCHCPT and found "L[.]'s statements to investigators have been inconsistent . . . [n]o charges were ever recommended or filed against [Grandfather] in California or Arizona," and, consequently, "no reliable evidence [was] presented suggesting that L[.] was the victim of sexual abuse by [Grandfather.]"

¶8          The court then made each finding required by A.R.S. § 25-409(E), found that Grandparents "were a significant part of L[.]'s life before Father cut off their access to her," and concluded that visitation with

3

Grandparents would be in L.'s best interest. The court awarded Grandparents one weekend of visitation per month (with the parties to select the weekend) and seven consecutive days in the summer. The court also granted Mother and Father joint legal decision-making authority, designated Father the primary residential parent, and granted Mother nine hours of supervised parenting time each weekend, with the possibility of additional parenting time upon producing two consecutive negative drug tests.

¶9        Father timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101.

**DISCUSSION**

¶10        Father challenges only the superior court's award of grandparent visitation.[1] Parents have a fundamental right "under the Fourteenth Amendment to raise their children as they see fit." *Graville v. Dodge*, 195 Ariz. 119, 123 ¶ 19 (App. 1999); *see also Troxel v. Granville*, 530 U.S. 57, 66 (2000). "This right limits arbitrary intrusion into fit parents' decisions regarding their children, including the decision to limit or deny third-party visitation." *Borja v. Borja*, 254 Ariz. 309, 313 ¶ 8 (App. 2022) (citing *McGovern v. McGovern*, 201 Ariz. 172, 178 ¶ 19 (App. 2001)). Section 25-409(C)(2) allows the superior court to grant visitation to grandparents if the court finds visitation would be in the child's best interest and, as applicable here, "[t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed." If granted under these circumstances, grandparent visitation "does not substantially infringe on parents' fundamental rights." *McGovern*, 201 Ariz. at 175 ¶ 9 (citation omitted).

¶11        "Because the decision to award visitation rests within the family court's discretion upon finding that visitation is in the child's best interest, we will not disturb the court's decision absent an abuse of discretion in making the best-interest finding." *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 120 ¶ 36 (2018). We view the evidence in the light most favorable to upholding the court's decision and will find an abuse of discretion only when the record "is devoid of competent evidence to support the [court's] decision." *Id.* (quotation marks and citation omitted).

---

[1]        Father, for example, does not challenge the constitutionality of A.R.S. § 25-409.

Thus, we defer to the superior court's factual findings if "supported by competent evidence." *Borja*, 254 Ariz. at 313 ¶ 10.

## I.     Grandparent Visitation Award

**¶12**          Father first argues the superior court abused its discretion in awarding grandparent visitation due to the allegations that Grandfather sexually abused L.  Specifically, Father challenges the superior court's finding that "[n]o reliable evidence has been presented suggesting that L[.] was the victim of sexual abuse by [Grandfather]," arguing instead that the court "should have erred on the side of caution" and denied visitation. Grandparents deny these accusations and argue instead that Father "coached" L. "to make false allegations."

**¶13**          The court heard the testimony of Father and Grandfather and reviewed police reports from both LHCPD and RCPD as well as the forensic interview PCHCPT conducted.  After doing so, the court found that "L[.]'s statements to investigators were inconsistent" and "no reliable evidence . . . suggesting that L[.] was the victim of sexual abuse by [Grandfather.]"  We conclude the record adequately supports the court's finding.

**¶14**          Grandfather denied the abuse allegations and there is little evidence to corroborate them, physical or otherwise.  Father originally informed LHCPD that L. told him the abuse had recently taken place in a restaurant bathroom in Arizona, but when interviewed by both LHCPD and RCPD, L. claimed the abuse took place over a year prior in California. When PCHCPT interviewed L., she was first asked what she liked to do and immediately responded with allegations that Grandfather took inappropriate photos of her.  L. made statements during the interview that could be viewed as undercutting the reliability of the allegations. Ultimately, neither police department recommended charges.  Based on the conflicting evidence and our deferential standard of review, there is no basis to set aside the superior court's finding about the alleged abuse.  *See In re Marriage of Friedman*, 244 Ariz. at 120 ¶ 36.

**¶15**          Father further argues the court should have deferred to his decision to deny Grandparents visitation.  When considering whether granting visitation is in the child's best interest, the court must "give special weight to the legal parents' opinion of what serves their child's best interest[.]"  A.R.S. § 25-409(E).  Thus, when a third party seeks visitation after a legal parent has refused, the court applies a rebuttable presumption that the parent is acting in his "child's best interest in decisions concerning

the child's care, custody, and control, including decisions concerning grandparent visitation." *McGovern*, 201 Ariz. at 177 ¶ 17. However, "when two legal parents have competing visitation views . . . the respective presumptions effectively and necessarily cancel each other out" and the superior court is "statutorily permitted to grant visitation rights on a finding that the visitation is in the [child's] best interests." *In re Marriage of Friedman*, 244 Ariz. at 117 ¶¶ 22–23 (internal quotation marks and citation omitted).

**¶16** Mother supported Grandparents' request for reasonable visitation time with L. and informed the court that she did not believe the abuse allegations were true. Consequently, the superior court was not required to give Father's opinion any "special weight," because the parents' competing opinions cancelled each other out. *See In re Marriage of Friedman*, 244 Ariz. at 119 ¶ 32 (explaining that any parent whose parental rights have not been terminated is a legal parent whose opinion is entitled to "special weight" under the statute). At that point, the court was permitted to grant Grandparents visitation if the court found it would be in L.'s best interest. *Id.* at 177 ¶ 23. The court considered each of the five best-interest factors enumerated in A.R.S. § 25-409(E) and concluded that allowing Grandparents visitation was in L.'s best interest. The court did not abuse its discretion.

## II. Amount of Visitation

**¶17** Father also argues the superior court erred by awarding Grandparents "excessive" visitation time. We review the amount of visitation awarded for an abuse of discretion. *Borja*, 254 Ariz. at 315 ¶ 16; *Graville*, 195 Ariz. at 128 ¶ 38. "Any visitation awarded must be as minimally intrusive as possible because grandparent visitation orders must adhere to the parents' superior right to the custody and care of their children." *Borja*, 254 Ariz. at 314 ¶ 16 (internal quotation marks omitted).

**¶18** Father contends the amount of visitation time was excessive because "his evidence [that Grandfather was abusing L.] outweighed [Grandparents'] evidence." But we cannot reweigh evidence or determine witness credibility on appeal. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019). The superior court found there was insufficient credible evidence of abuse, L. wanted to have visitation with Grandparents, and it was in L.'s best interest to have such visitation. As previously explained, the court did not abuse its discretion in making those findings.

¶19 Father also argues that the amount of visitation awarded is excessive because Grandparents can visit L. during Mother's nine hours of supervised parenting time each weekend. Grandparents' theoretical ability to see L. more than one weekend per month does not invalidate the superior court's order *guaranteeing* them visitation. The superior court determined that it was in L.'s best interest to spend time with Grandparents and then provided them with the legal authority to exercise that right. The court "designate[d] the frequency of visits and amount of time" by "ordering visitation at least one weekend a month," and left the parties with the discretion to determine on which dates to exercise visitation. *See Borja*, 254 Ariz. at 316 ¶ 24. Because Mother has nine hours of supervised visitation time per weekend, Grandparents' weekend visitation time reduces Mother's available visitation time too. Thus, the superior court did not abuse its discretion.

¶20 Finally, we reject Father's argument that the amount of visitation time was excessive because in the future Mother may petition the court for roughly equal parenting time, which may result in Father exercising less parenting time if Grandparents exercise their visits with L. during Father's parenting time. Father may address his concern to the superior court if Mother later successfully petitions for equal parenting time.

## ATTORNEYS' FEES

¶21 Both parties request their attorneys' fees and costs on appeal pursual to A.R.S. § 25-324. In our discretion, we deny both parties' requests. As the prevailing party, however, Grandparents may recover their costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶22 We affirm the superior court's order.



AMY M. WOOD • Clerk of the Court
FILED: AA

7